State v. Green.

AFFIRMED.

---

STATE v. GREEN, *Appellant.*

1. **Indictment**: SUFFICIENCY OF. The averments contained in the indictment itself, determine its sufficiency; not those that may be found in the copy furnished the defendant.

2. ———: RIGHT TO TRUE COPY OF: WHEN WAIVED. The defendant has, under our statute, a right to a true copy of the indictment, 48 hours before his trial, and, if an incorrect copy is furnished, he has the right to demand a true copy, and delay the trial until it is furnished; but, if he pleads without such copy, and makes no objec-

66 631
97 672

66 631
99 113
34a 402

66 631
100 519

66 631
109 660
111 598
53a 647

66 631
117 620
51a 324

66 631
56a 415

66 631
132 197

66 631
137 269

66 631
144 39

66 631
177 4 83

tion for want of it, he cannot after verdict, on that account, claim a new trial. *Lisle v. State*, 6 Mo. 428, followed.

3. **Practice, Criminal**: INDICTMENT CONTAINING SEVERAL COUNTS: MOTION TO COMPEL THE STATE TO ELECT. When there are several counts in an indictment, a motion to compel the State to elect on which count the case shall be tried, is addressed to the sound discretion of the trial court, and the Supreme Court will not interfere with its ruling, unless it is clear that the discretion has been abused to the injury of the accused.

4. **Thanksgiving day** : SUNDAY : COMPUTATION OF TIME. Thanksgiving day, although by statute a public holiday, and, for certain purposes, considered to be the same as Sunday, is properly counted as part of the 48 hours within which the defendant is required to make his challenges, after he is furnished with a list of jurors ; in computing statute time, Sunday itself should be counted unless expressly excepted.

5. **Indictment for Murder** : EVIDENCE. Under an indictment for murder in the ordinary form, proof may be made that the deceased was an officer, regularly appointed and qualified, and that he was acting within his jurisdiction, and in the discharge of his duty when killed.

6. **Killing of Officer** : OFFENSE AT COMMON LAW, UNDER THE STATUTE. At common law, where an officer, having authority to arrest, whether it be for misdemeanor or felony, and using the proper means for that purpose, is resisted and killed, it is murder in all who take part in such resistance.

Under the statute, (Wag. Stat., p. 445, Sec. 1), it is murder in the first degree only—when the person whose arrest is attempted, is charged with the commission of a felony.

7. **Definition of Felony**: ASSAULT WITH INTENT TO KILL. Under the statute defining felony (Wag. Stat., p. 516, Sec. 33), any offense is a felony which is liable to be punished by imprisonment in the penitentiary. The fact that it may also be punished by fine, or by fine and imprisonment in the county jail, does not alter its character, (*following Johnston v. State*, 7 *Mo.* 183). Assault with intent to kill is a felony.

8. **Murder in First Degree.** Willfulness, deliberation and premeditation are not elements necessary to constitute a homicide committed in the perpetration, or attempt to perpetrate a felony, murder in the first degree.

9. **Arrest**: NOTICE OF OFFICER'S AUTHORITY, WHAT SUFFICIENT. An officer duly appointed and qualified, and authorized by a warrant to arrest any offender, gives sufficient notice of his authority to do so by reading to him the warrant of arrest.

10. **Murder**: MANSLAUGHTER: INSTRUCTIONS. Where an officer of the law, provided with a legal warrant of arrest, reads the same to the person whose arrest is ordered, and informs him of the offense with which he is charged, and attempts to execute the warrant in a lawful manner, and, while so doing, is shot down by such person without provocation, either by word or act, and the killing is deliberately and premeditately done; *Held*, not to present a case for instructions in regard to murder in the second degree, nor in regard to manslaughter in any of its degrees.

11. **The Duties of a Deputy Marshal** being defined by law, he may execute a warrant placed in his hands without special instructions from his principal.

12. **A Grand Jury** may consist of twelve men.

*Appeal from Jackson Criminal Court.*—HON. HENRY P. WHITE, Judge.

*Blake L. Woodson* for appellant.

1. A defendant, when charged with a capital offense, must be furnished with a copy of the indictment; he is not bound to look beyond the certified copy, and when this states no offense, the indictment should be quashed, or a correct copy furnished. 2 Wag. Stat, p. 1095, Sec. 2.

2. The State should have been compelled to elect counts for trial, and should not have been allowed to wait until the evidence was in, and then ask instructions on the second count alone.

3. The list of jurors should have been furnished defendant at least forty-eight hours before trial; but of the forty-eight hours allowed in this case, one whole day was a legal holiday.

4. 1 Wag. Stat., p. 479, Sec. 20, provides a special punishment for resisting an officer, but no such penalty is provided for killing an officer. 1 Wag. Stat., p. 445, Sec. 1, defines murder in the first degree. The third instruction gives another definition, and withdraws entirely from the jury the statutory requirements of "willful, deliberate and premeditated killing," and substitutes therefor the fact of deceased being a legal officer, having a legal war-

rant, which he reads or exhibits with information of the substance of its contents, and the further fact that he was proceeding in a quiet and lawful manner to arrest the defendant. It dispenses with all knowledge on the part of defendant of the officer's official character, which was required even at common law. *Roberts v. State*, 14 Mo. 147; Kelly Cr. L. & P., § 492; *Commonwealth v. Drew*, 4 Mass. 391; *Logue v. Commonwealth*, 2 Wright 265; *Rafferty v. People*, 69 Ill. 111; *State v. Daubert*, 42 Mo. 242; *State v. Smith*, 53 Mo. 267.

5. The first and second instructions asked by the defendant, should have been given. The whole transaction took place in three or four minutes. There were no preconcerted threats nor plan, on the part of the defendant, to resist or kill the officer; he did not know the officer when he came in, nor the officer him. Under such circumstances the court should have left the jury to say whether the killing was intentional, malicious, and without just cause, constituting murder in the second degree, or all this, and willful, deliberate and premeditated, in addition. *State v. Oliver*, 2 Houst. (Del.) 585; *State v. Lane*, 64 Mo. 319; *Roberts v. State*, 14 Mo. 147; *Commonwealth v. Drew*, 4 Mass. 391.

6. The third instruction asked by defendant should have been given. Kelly Cr. L. & P., § 492; Bishop Cr. Pro., Ed. 1866, §§ 647-8-9; 32 N. Y. 509; *Logue v. Commonwealth*, 2 Wright (Penn.) 265; *State v. Kirby*, 2 Iredell 201; *Rafferty v. People*, 69 Ill. 111.

7. Also, the 4th, 5th, 6th, 7th, and 8th instructions. Bishop's Cr. Law, (4th Ed.) §§ 383-4; *Rex v. Geo. Hood*, British Cr. Cas. 281; S. C., 1 Moody 281; *Griswold v. Sedgwick*, 1 Wend. 126; *Griswold v. Sedgwick*, 6 Cow. 456; *Gurnsey v. Lovell*, 9 Wend. 319; 2 N. H. 318; 1 Bald. 239; 3 Harrington 416; Shorter's case, 2 Comst. (N. Y.) 193.

8. The indictment was returned into court by a grand jury of twelve men, March 2nd, 1877, by virtue of the constitution of 1875, Art. 2, Sec. 28. This constitutional pro-

vision was in conflict with the law then existing, and required legislation to enforce the same, which was afterwards had in 1877. Sess. acts of 1877, p. 278; Const. of Mo. Sched., Sec 1; Sec. 12, p. 14; *Han. & St. Joe R. R. Co. v. State Board, &c.*, 64 Mo. 304, 294; *St. Joe & Den. City R. R. Co. v. Buchanan Co. Ct.*, 39 Mo. 489, 485; 15 Peters 449; 3 Wheat. 336.

9. The warrant under which Hughes attempted to arrest defendant was not for a felony, as that term is used in Sec. 18, p. 479, Wag. Stat. *State v. Thompson*, 30 Mo. 470.

*J. L. Smith*, Attorney-General, for the State.

1. The motion to quash was properly overruled, because not directed to the original indictment, but to an incorrect copy. As he did not demand a correct copy, he is presumed to have waived the same. *State v. Jackson*, 12 La. An. 679; *Lisle v. State*, 6 Mo. 426.

2. The motion to compel an election by the State of the count upon which it would proceed to trial was properly overruled. *State v. Turner*, 63 Mo. 436; *State v. Sutton*, 64 Mo. 107; *State v. Porter*, 26 Mo. 201.

3. The rule is well settled that, when one of the intervening days is a holiday, such day is counted in computing statute time. *King v. Dowdall*, 2 Sandf. 131; *Ex parte Dodge*, 7 Cowen 147; *Easton v. Chamberlain*, 3 How. Pr. 412; *Taylor v. Corbiere*, 8 How. Pr. 385; *Anderson v. Baughman*, 6 Mich. 298; Goswiler's estate, 3 Penn. 200; *Franklin v. Holden*, 7 R. I. 215.

4. At common law, the killing an officer by one whom he is attempting to arrest under a legal warrant, is murder. 1 East P. C. 309; 1 Hale, P. C. 464 and note, 465, 457; 2 Hale, P. C. 118; *State v. Will*, 1 Dev. & Bat. 121; *Boyd v. State*, 17 Ga. 194; *Angell v. State*, 36 Tex. 542; *State v. Oliver*, 2 Houst. (Del.) 585, 604. Under our statute a homicide committed in the perpetration or at-

tempt to perpetrate any felony, is murder in the first degree. Wag. Stat., p. 445, Sec. 1. It is a felony to resist an officer in the service of a warrant in any case of felony. Wag. Stat., p. 479, Sec. 18. Assault with intent to kill, is a felony. Wag. Stat., Secs. 29, 32, 33, pp. 449, 450. So that, clearly, this murder was committed in the attempt to perpetrate a felony, and was, therefore, murder in the first degree. The defendant was resisting an arrest for felony, which was in itself a felony, and the law presumes the necessary malice from the simple act of killing. *State v. Foster*, 61 Mo. 549 ; *State v. Lane*, 64 Mo. 319 ; *State v. Wieners*, *ante* p. 13 ; *Brooks v. Com.*, 61 Pa. St. 352.

5. It was not necessary to allege in the indictment that Hughes was a deputy marshal, and had a legal warrant, etc. *State v. Roberts*, 15 Mo. 36; *Boyd v. State*, 17 Ga. 194; 3 Chitty Crim. Law, 172; Mackalley's case, 9 Coke 111, 65.

6. The production by Hughes of the warrant to arrest the defendant was sufficient notice to him of the fact that he was deputy marshal of Jackson county ; as such, he was empowered by the statute to perform any of the duties prescribed by law for the marshal. Acts of 1871, p. 87, § 10 ; Whart. on Hom., §§ 240, 252 ; *State v. Weed*, 1 Foster (N. H.) 262; *Tom v. State*, 8 Humph. 86; *State v. Oliver*, 2 Houst. (Del.) 585 ; *People v. Pool*, 27 Cal. 572 ; Roscoe's Crim. Ev., 755, 760; 1 Russ. on Crimes, 627; 1 Hale's P. C., 461, 578; *Rex v. Curtis*, Foster 135 ; *Arnold v. Steeves*, 10 Wend. 514; *State v. Caldwell*, 2 Tyler (Vt.) 212; *Com. v. Cooley*, 6 Gray 350; *Drennan v. People*, 10 Mich. 169, 183 ; *State v. Wetherall*, 5 Harring. (Del.) 487 ; *Johnson v. State*, 30 Ga. 426 ; 2 Hawk. P. C., Ch. 13, § 28, p. 137.

7. If Hughes designated Green by any name, and told him that he had a warrant for him, it was Green's duty to submit to the arrest, and then demand to be discharged, if the warrant was in fact for Smith; if he chose to resist the arrest on that ground, he did so at his peril. *U. S. v. Travers*, 2 Wheat. C. C. 510 ; *State v. Jones*, 16 Mo. 388.

8. A grand jury composed of twelve men, was a legal grand jury. Art. 2, Sec. 28, Const. of 1875. This section was self executive, and required no legislation to enforce it. *State v. Dearing*, 65 Mo. 530.

NORTON, J.—At the February term, 1877, of the criminal court of Jackson county, at Independence, the defendant was indicted jointly with one Frank Miller, for murder in the first degree for the killing of Henry H. Hughes. The indictment contained three counts, the first of which charged Green and Miller jointly as principals; the second charged Green as principal and Miller as being present, aiding, abetting, &c.; and the third charged Miller as principal and Green as being present, &c. The defendants were duly arraigned, and each pleaded not guilty, and on motion of each, a severance was ordered. On application of the defendant, the venue of the cause, as to him, was changed to the criminal court at Kansas City. He afterwards filed a motion to quash the indictment, attaching to his motion, what purported to be a copy of said indictment which was furnished him, and alleging that said copy charged no offense, and therefore the original should be quashed. This motion was by the court overruled. He thereupon filed his motion to compel the State to elect upon which count it would proceed, which the court overruled. The empanneling of a jury was then proceeded with, and, on November 28th, a list thereof was delivered to defendant, and the cause was postponed till November 30th, on which day the defendant objected to announcing his challenges, for the reason that, as one of the days intervening since he had been furnished with the list was Thanksgiving day, he had not been allowed his full forty-eight hours, which objection the court overruled. The evidence on the part of the State showed that the deceased was duly appointed deputy marshal of Jackson county by the marshal thereof, and his appointment duly confirmed and recorded, and the oath administered; that, on the 6th

day of February, 1877, the following warrant was delivered to him by the marshal of Jackson county:

### Warrant of Arrest.

The State of Missouri to the Marshal of Jackson county, Greeting:

Whereas, Isaac Gardner, of the county of Jackson, hath this day given information upon oath to me, J. C. Ranson, a justice of the peace within and for said county of Jackson, that, on the 4th day of February last past, at the county aforesaid, one George Tarwater, one Richard Green and one Frank Miller, did assault and shoot at one Henry Mensing and Isaac Gardiner, from pistols loaded with powder and bullets, with intent to kill them, the said Henry Mensing and Isaac Gardiner; these are therefore to command you forthwith to apprehend the said George Tarwater, Richard Green and Frank Miller, and· bring them before me to answer the premises, and further to be dealt with according to law. Given under my hand at the county of Jackson, aforesaid, this 5th day of February, A. D. 1877.

ᴊos. C. RANSON,
Justice of the Peace.

That Ranson was a duly appointed and qualified justice of the peace within and for Jackson county. To all this evidence defendant objected, because there was no allegation in the indictment that Hughes was a deputy marshal of Jackson county, which objection was by the court overruled.

The evidence on the part of the State further showed that Green, Miller, one Winn and Gilchrest were working as wood choppers for one Fisher, and were together in the shanty, about six miles east of Independence; that, on the evening of February 10, 1877, Hughes met Fisher, and asked him if he had hired any new hands lately, to which Fisher replied that he had, and Hughes asked to see them; that Fisher and Hughes together came into the

cabin, and Hughes addressed Miller and Winn, mistaking Winn for Green, whereupon Winn said he was mistaken, and Fisher pointed to the defendant, and said that was Green; that Hughes then drew forth his warrant and said he had a warrant for Frank Miller and Richard Green, and asked Miller to give him his pistol, and then read his warrant to them; that when Hughes commenced reading, Green drew a pistol out of his left hand pocket and passed it behind him and took it in his right hand, and as soon as Hughes ceased, said, "God damn you, get out of here!" and fired at him; that two shots were fired in immediate succession, when Green again fired, and Hughes fell out of the door, saying, "I am killed," and died within five minutes after. On cross-examination the witnesses stated that Hughes did not notify the parties that he was the deputy marshal, and gave no notification of his official character other than to say that he had a warrant for Frank Miller and Richard Green, producing it; that he had his hand in the right pocket of his overcoat and held the warrant in his left hand. The physician who examined Hughes stated that he came to his death from two wounds in his right breast, made by pistol balls. The defendant objected to evidence of more than one wound, which objection being overruled, he excepted. James W. Liggett, the marshal, testified that he gave this warrant to Hughes, with directions to ascertain the whereabouts of the parties named, and identified the warrant heretofore set forth as being the one. On cross-examination, the witness stated that he did not direct Hughes to arrest them. On the part of the defendant, Frank Miller and defendant, himself, testified that, on the night of the killing, Hughes and Fisher came into the cabin, and Hughes spoke to Miller, asking him if his name was Miller, and upon receiving an affirmative answer, spoke to Winn, calling him Smith, and that Fisher, then nodding towards defendant, said that was the man, and Hughes said he had a warrant for them, charging them with an assault with intent to kill, and they had to

come with him to Kansas City, whereupon Green stated that he could not arrest him without a warrant, and drew his pistol and told him to go out; that Hughes and he fired at the same time, and Green fired a second time; that Green and Miller then ran into the woods and hid until they were captured.

The court thereupon gave the following instructions on the part of the State: That if the jury believe from the evidence, that on or about the tenth day of February, 1877, at the county of Jackson and State of Missouri, the defendant, Richard Green, willfully, deliberately, premeditatedly, and of his malice aforethought, killed Henry H. Hughes, in manner and by the means as charged in the second count of the indictment, then the jury must find the defendant guilty of murder in the first degree, and the jury are further instructed that the deliberation and premeditation necessary to constitute murder in the first degree, may be inferred from the circumstances connected with the killing, and if such deliberation and premeditation existed for a moment before the killing, it is sufficient. The second instruction defined the words "willfully, deliberately, premeditatedly, and malice," as used in the foregoing instruction.

3rd. That if the jury believe from the evidence, that the deceased, Henry H. Hughes, at the time he received the fatal wound, was the legally appointed deputy marshal of Jackson county, and that he had in his possession a warrant issued by J. C. Ranson, a justice of the peace of Jackson county, commanding him to arrest the defendant Richard Green, and that the deceased read to the defendant, or in his hearing, the warrant for his arrest, or notified the defendant that he had such warrant, and exhibited the same to him, stating to him the substance of its contents; and if they shall believe from the evidence, that the deceased was proceeding in a quiet and lawful manner to arrest defendant, and that defendant resisted such arrest,

and shot and killed the deceased to avoid arrest, then such killing is murder in the first degree.

4th. That if the jury believe from the evidence, that the deceased, Henry H. Hughes, was the legally appointed deputy marshal of Jackson county, and that he had in his possession a warrant issued by J. C. Ranson, a justice of the peace of Jackson county, commanding him to arrest the defendant, Richard Green, then the deceased had a right to arrest him, and might use such force as might be reasonably necessary to enable him to effect such arrest, and if the jury believe from the evidence, that the deceased, at the time of the fatal shooting, notified defendant of his authority to arrest him, or read to him, or in his hearing, the warrant for his arrest, or exhibited the warrant, stating to him the substance of its contents, and that the deceased used only such force and caution as might be reasonably necessary to enable him to make the arrest, and that the defendant resisted said arrest, and shot and killed the deceased, then such killing is murder in the first degree.

On the part of the defendant the court instructed the jury that they should state in their verdict, upon which count of the indictment they found him guilty, and if they had "a reasonable doubt of his guilt, it is their duty to give the defendant the benefit of such doubt, and acquit," and also gave the following instructions:

11th. Unless the jury believe from the evidence that Hughes, at the time he attempted to arrest defendant, disclosed to said defendant his, said Hughes,' official position as an officer of the law, or that said official position was at the time known to said defendant, or that said Hughes informed defendant that he had a warrant for his, defendant's, arrest, and exhibited the warrant and informed defendant of its contents, by reading the same, or stating the substance of its contents, then defendant had a right to resist such attempted arrest, and to use such means as at

41

the time were reasonably necessary to prevent the said arrest.

12th.    If the jury believe from the evidence, that the deceased did not inform defendant of his official position, and that defendant did not know his official position, and that deceased did not inform defendant that he had a writ or warrant for his arrest, exhibiting same, and informing defendant of its contents, by reading same, or stating the substance of its contents, and that, in attempting to arrest defendant under such circumstances, deceased caused defendant reasonably to apprehend that his life was in danger, or that deceased was about to do him some great bodily harm, and he had reasonable cause to apprehend immediate danger of such purpose on the part of Hughes being accomplished, and that defendant killed said Hughes to prevent the accomplishment of such purpose, you should acquit the defendant on the ground that such killing was justifiable in law, because done in self-defense; and, in order to acquit on the ground of self-defense, it is not at all necessary that the danger apprehended by defendant should have been real or actual, or that such danger should have been then actually impending or about to fall on defendant; it is only necessary that the jury should believe that the defendant had reasonable cause to apprehend that there was immediate danger of a design to kill him, or do him some great bodily harm, and the same was about being accomplished by the deceased.

14th.    Before the jury can find the defendant guilty, as charged, they must find from the evidence that the killing was done willfully, deliberately and premeditatedly, as well as intentionally and with malice aforethought.

Instructions numbered 1, 2, 3, 4, 5, 6, 7, 8 and 10 asked by defendant, were by the court refused. The first and second defined murder in the second degree. Numbers three and four told the jury that, although Hughes was an officer and had a proper and legal warrant for defendant's arrest, yet, unless defendant knew that deceased was

such officer, his offense was manslaughter only. Number five told the jury that, as defendant had not been arrested by Hughes, they could find him guilty of manslaughter only, unless express malice were proved. Number six told the jury that if defendant shot Hughes to prevent him from arresting him, and not with intent to kill deceased, then they could convict of manslaughter in the third degree only. Number seven told them that if the actions of Hughes led defendant to apprehend that he was about to kill him or do him some great bodily harm, they should acquit, "or, at furthest, find him guilty of manslaughter only." Number eight told the jury that if the warrant was delivered to deceased by Liggett, the marshal, with directions to ascertain the whereabouts of defendant, and not for the purpose of arresting him, then such warrant did not justify him in attempting to arrest defendant, and they could "find defendant guilty, if at all, of manslaughter only." The jury found the defendant guilty of murder in the first degree. The defendant filed his motions for a new trial and in arrest of judgment, alleging therein, among other things, that the indictment herein, having been presented by a grand jury of twelve men, the court had no jurisdiction thereof, which motions being by the court overruled, he excepted, and this case is now brought here by appeal.

1. We will consider the alleged errors, of which defendant complains, in the order they appear in the above record: The motion to quash the indictment is founded principally on the ground that the copy thereof, which was given defendant by the the clerk, charged no offense. The question of the sufficiency of an indictment is to be determined by the averments it contains, and not by those to be found in an incorrect copy of it. The indictment, in question, contains every averment necessary to charge the crime of murder in the first degree.

While it is true that, under our statute, the defendant

had a right to a true copy of such indictment, forty-eight

2. ————: hours before his trial, it is equally true that
right to true copy
of; when waived. if an incorrect copy be given him, its only
effect would be to give him the right to demand a true
copy, and delay the trial until it is furnished him ; if he
pleads without such copy, and makes no objection for want
of it, he cannot after verdict, on that account, claim a new
trial. *Lisle v. State*, 6 Mo. 428. Under a statute in Louis-
iana, similar to ours, which gave the defendant a right to
a copy of the indictment and list of the jury, two entire
days before his trial, it was held that, when the accused
goes to trial without objection, it will be too late after con-
viction to urge as error, that he had not been served with
a copy of the indictment and a list of the jury summoned
to try him, and that, if an imperfect copy be served upon
him, and he consent to go to trial without insisting on a
perfect copy, and the delay accorded to him by law, it will
be too late to make the objection after conviction. *State
v. Jackson*, 12 La. An. 680.

2. The motion to compel the attorney of the State
to elect on which count he would proceed, was properly

3. PRACTICE, CRIM-
INAL: indictment overruled. Where the counts in the indict-
containing sever-
·al counts: motion ment relate to the same transaction, it is not
to compel the
State to elect. error for the court to refuse to compel the
State to elect on which count it will proceed. *State v. Tur-
ner*, 63 Mo. 436 ; *State v. Porter*, 26 Mo. 201 ; *State v. Sutton*,
64 Mo. 107. A motion to compel the State to elect, when
there are several counts, is addressed to the sound discre-
tion of the court trying the case, and this court will not
interfere, unless it is clear that the discretion has been
abused to the manifest injury of defendant. *State v. Dau-
bert*, 42 Mo. 242.

3. It is insisted that, as defendant was furnished with
a list of jurors on the 28th of November, the court erred

·4. THANKSGIVING in compelling him to make his challenges on
DAY : Sunday:
computation of the 30th of November, because the 29th day
time.
of said month was a public holiday under the proclama-

tion of the Governor of the State and the act of 1877, p. 37, and should not have been counted as any part of the forty-eight hours within which he had to make his challenges. The first section of said act provides that thanksgiving days, when appointed by the Governor of the State, or the President of the United States, shall be public holidays. The second provides that such holidays shall be considered the same as the first day of the week, called Sunday, as regards the presenting for payment or acceptance, &c., of bills of exchange, bonds, notes and other commercial paper. In the computation of time, for the purposes mentioned in the act, such holidays may not be counted, except as therein provided. The act extends thus far in estimating time, and no further. If such holidays are to be considered as Sunday for all general purposes, they would still be counted in computing statute time, unless expressly excepted. In *Ex parte Dodge*, 7 Cowen 147, it was held that Sunday has in no case been excluded in counting statute time. *Anderson v. Baughman*, 6 Mich. 298; *Franklin v. Holden*, 7 R. I. 215, are to the same effect.

4. The defendant objected to the warrant read in evidence, as well as the evidence proving that Hughes, the deceased, had been regularly appointed and qualified to act as deputy marshal for Jackson county, because these facts were not alleged in the indictment. We think the trial court is fully sustained by the authorities in overruling the objection. In case of *Boyd v. The State*, 17 Ga. 194, where the defendant was indicted for murder in killing an officer, while executing a warrant for his arrest, it was held that it was unnecessary to allege in the indictment charging the offense, that the deceased was an officer, acting in the discharge of his duty when killed, and that, under an indictment in the ordinary form, the peace warrant which the officer was attempting to execute, as well as all the other evidence tending to establish the official character of deceased was admis-

<span style="font-variant: small-caps;">5. Indictment for murder: evidence.</span>

sible.  The same doctrine is laid down in 3 Chitty's Crim.
Law 172, that when the indictment is for the murder of
an officer, or in any case where the circumstances are com-
plicated, it will not be necessary to set out any of the de-
tails, and that the indictment in such cases will be sufficient
if it contains the general requisites of an indictment for
murder.  In Mackalley's case, reported in 9 Coke's Rep.
65, 111, it was, among other things, resolved by all the
judges of England, who had assembled at the King's com-
mand, and by all the Barons of the Exchequer, that when
an officer in the discharge of his duty was slain, "there
needs not a special indictment on all the matter drawn,
but a general indictment, that such a party *ex malitia sua
precogitata percussit, etc,*" would be sufficient.  It was further
declared "that if any sheriff, under-sheriff, sergeant, or
other officer, who hath execution of process, be slain in
doing his duty, it is murder in him who kills him, although
there was not any former malice betwixt them; for the
execution of process is the life of the law, and therefore
he who kills him shall lose his life; for that offense is
*contra potestatem regis et legis,* and therefore, in such case,
there needs not be any inquiry of malice."

5.  The third and fourth instructions given on behalf
of the State, are objected to on the ground that the killing
of Hughes under the circumstances named
therein, is not murder under our statute;
and also, because there was no evidence that
deceased, at the time he was shot, notified defendant of
his authority to arrest him.  At common law, when of-
ficers having authority to arrest or imprison, and using the
proper means for that purpose, are resisted and killed, it
is murder in all who take part in such resistance.  This
protection of the law is extended only to persons having
proper authority, and who use that authority in a proper
manner.  1 Russ. on Crimes, 592; 1 East P. C. 309; 1 Hale
P. C. 464–5; 2 Hale 118.  At common law this doctrine
applied as well to arrests made under a warrant for a mis-

*6. KILLING OF OF-
FICER: offense at
common law: un-
der the statute.*

demeanor, as for a felony. Our statute has modified it so as to make only that murder in the first degree, when the officer is killed by a person he is attempting to arrest, charged with felony.

Section one, page 445, Wag. Stat., provides that, "Every murder which shall be committed by means of 7. DEFINITION OF poison, or by lying in wait, or by any other FELONY: assault with intent to kill kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree." Under this section, every homicide committed in the perpetration or attempt to perpetrate any felony, shall be deemed murder in the first degree. In the case of *State v. Wieners*, ante, p. 13, it was held, "that such a killing was murder, although not specifically intended, for the law attaches the intent to commit the other felony to the homicide." But it is said that the warrant, under which the deceased was acting in making the arrest, did not charge a felony, and that, therefore, the third and fourth instructions were erroneous. The offense charged in the warrant is an assault with intent to kill, which is punishable by imprisonment in the penitentiary, not exceeding five years, or by fine not less than five hundred dollars, or by fine not less than one hundred dollars and imprisonment in the county jail not less than three months, &c. It is earnestly argued that under the statute defining felonies, only those offenses are embraced which are punishable only by death or imprisonment in the penitentiary, and that the offense charged in the warrant is not included in this class. The statutory definition is as follows: "The term felony, when used in this or any other statute, shall be construed to mean any offense for which the offender shall be liable by law to be punished with death or imprisonment, and no other." While at first blush, the view contended for seems plausible, its fallacy becomes manifest, when we consider the section defining felony, in connection with Sec. 35, de-

fining misdemeanors, which is as follows: "The term misdemeanor, as used in this or any other statute, shall be construed as including every offense punishable only by fine or imprisonment in the county jail, or both." Now, according to the view of defendant's counsel, the offense of assaulting with intent to kill would neither be a felony nor a misdemeanor. It could not be a felony, because it may be punished either by imprisonment in the penitentiary, or by fine or imprisonment in the county jail, or both; it could not be a misdemeanor, because it may be punished by imprisonment in the penitentiary. We could not, therefore, accept a construction of the statute which would make all offenses, the punishment of which may be either imprisonment in the penitentiary, or fine and imprisonment in the county jail, neither felonies nor misdemeanors. Besides this, in the case of *Johnston v. The State*, 7 Mo. 183, it was held that a felony under our act is an offense for which the party may be imprisoned in the penitentiary. The Legislatures have wisely left it to the discretion of the jury, in many cases, to inflict the punishment of imprisonment in the penitentiary, or fine and imprisonment in a county jail, and the offense charged in this indictment is one of them. Though this discretion is given to the juries, they are still felonies. The statute defining felonies was the same then as now.

It is also objected that the elements of willfulness, deliberation and premeditation are not included in the third and fourth instructions. The identical question here presented, arose in the case of the *State v. Jennings*, 18 Mo. 435. The following instruction, numbered 6, was given in that case: "If the jury believe from the evidence, that it was not the intention of those concerned in lynching Willard, to kill him, but that they did intend to do him great bodily harm, and that in so doing death ensued, such killing is murder in the first degree under our statute." In passing upon this instruction, Judge Ryland said: "The sixth instruction is correct under th

8. MURDER IN FIRST DEGREE.

statute of this State. Homicide, committed in the attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree. The 38th section makes the person by whose act or procurement great bodily harm has been received by another, guilty of what is by our law called a felony; that is, guilty of such an offense as may be punished by imprisonment in the penitentiary."

The further objection to the third and fourth instructions is made that there was no evidence showing that the deceased notified defendant of his authority. We think it is established, satisfactorily, by the evidence, that Hughes, the deceased, was a deputy marshal, fully authorized to execute criminal process anywhere in Jackson county, and that he notified defendant of his authority to arrest by reading the warrant. This, we think, is sufficient. When a constable commands the peace, or shows his staff of office, or shows his warrant, it is a sufficient intimation of his authority. 2 Wharton Cr. L. § 1041; Wharton on Homicide, Secs. 240, 252. An officer gives sufficient notice what he is, when he says to the party, I arrest you in the King's name. And, in such case, the party ought to obey him, though he knows him not to be an officer; and, if he has no lawful warrant, the party grieved may have his action for false imprisonment. *Hall v. Roche,* 8 T. R. 188; 1 Russ. on Cr. 624, 627; 1 East P. C. 315. It was held in case of *State v. Oliver,* 2 Houst. (Dela.) 585, that when the prisoner denied the authority of the person making the arrest, and objected to being taken by any one but the sheriff, his mistake on that subject could not excuse him for unlawful resistance to an officer duly authorized to arrest him, and who made that authority known to him. He who undertakes to resist an officer does so at his peril, if it turns out that the authority of such person or officer was valid. In case of *People v. Pool,* 27 Cal. 572, it was held that if an officer, in fresh pursuit of persons charged

*9. ARREST: notice of officer's authority; what sufficient.*

with crime, comes suddenly upon and calls out, "you are my prisoner, surrender," that these words are sufficient notice of his character as an officer. In case of *State v. Caldwell*, 2 Tyler, (Vt.) 212, it was held that it is not necessary for the sheriff or his deputies to show a warrant authorizing an arrest, when he first states he is acting in virtue thereof. "The sheriff, as the known and first officer of the court, is not obliged to show his warrant to anyone. His deputies are, by statute, clothed with the same power, and their names and deputations are put upon the public records of the county, that their appointment may be known to all, and all are obliged to obey these officers." A party, who is called upon by an officer to yield himself a prisoner, may demand that the warrant be read, or that he be informed of the contents thereof. If, however, he resist before an opportunity is given the officer to comply with his request, the officer may, if he has a valid warrant, first secure the arrest. *Commonwealth v. Cooley*, 6 Gray 350; *State v. Phiney*, 2 Me. 384; 2 Hale, P. C. 116. When a sheriff, or his deputy, regularly appointed and qualified, is acting within the limits of his jurisdiction and under a warrant directed to him, knowledge of his official character might well be inferred. Roscoe Crim. Ev. 760, 755. The marshal of Jackson county had conferred upon him by law, the same powers as the sheriff in similar cases, and the deceased, his deputy, as the evidence shows, notified defendant of his authority, and informed him of the offense for which his arrest was demanded. The cases to which we have been cited, are not analogous to the case before us. *Logue v. Commonwealth*, 38 Penn. (2 Wright,) 265, was a case where Lewis, a private citizen, was deputed by the constable to execute a writ for the arrest of Logue, charged with robbery. Lewis armed himself with a pistol and, in company with two other persons, concealed himself about midnight behind some bushes, and as Logue and others were passing, Lewis sprang upon him, and presented his pistol at Logue's breast, saying, "stop, men,"

whereupon Logue drew his pistol, shot and killed Lewis. The case was reversed because the court refused an instruction on the law of self-defense. In the case before us, the defendant had the full benefit of an instruction on that subject. The case of *Rafferty v. The People*, 69 Ill. 111, simply decides that the warrant in the hands of the policeman, who was killed, was void, and did not authorize the arrest of Rafferty, and for that reason, it was for the jury to determine, under proper instructions, whether the killing was murder or manslaughter. *Commonwealth v. Drew*, 4 Mass. 391, is to the same effect. In *Yates v. People*, 32 N. Y. 509, the prisoner was pursued by a mob, at night, shouting and threatening his life, and was seeking to escape under apprehension of great bodily harm if overtaken. He was seized by some one in his flight, whom he instantly killed, and the pursuer thus killed, proved to be an officer. It was held that under these circumstances, it was material for the State to fix upon the prisoner presumptive knowledge of the official character of the deceased; and that this presumptive knowledge might be shown by circumstances such as, that deceased was clad in the uniform of his office, and that it was light enough for prisoner to see it. The case of *Roberts v. State*, 14 Mo. 147, and also reported in 16 Mo., is distinguishable from the case at bar in this, that Roberts killed the police officer in resisting an arrest for a misdemeanor, and it was held that unless the killing was done in malice and with deliberation, it was only manslaughter.

We perceive no error in the instructions given, nor in the action of the court in refusing those not given. The 10. MURDER: manslaughter; instructions. law of the case was placed before the jury in the most favorable light to the accused, and he has no right to complain. We deem it unnecessary to consider *seriatim* the instructions refused, as those that were given embraced the law applicable to the case. It is, however, contended that the court should have given instructions one and two which defined murder in the second

degree. This is no case for such an instruction, or man-slaughter in any of its degrees. Here, an officer of the law armed with legal authority goes in a quiet and peaceable manner, in company with Fisher, in whose employ defendant was at the time, and who was presumably the friend and not the enemy of the accused, to the shanty, in which defendant and others were, to discharge a public duty imposed on him by law. He proceeds, without hostile demonstrations, to inform defendant of the nature of his mission, by reading the warrant, and is shot to death like a wild beast, without the slightest provocation either by act or word. The killing of deceased was deliberately and willfully done. This is shown by the evidence of defendant himself, when he testified and said, " that he would not let a man get the drop on him." It also appears from the fact that, while deceased was reading or preparing to read the warrant, defendant drew his pistol and held it in his right hand behind him, thus evincing preparation to carry out the wicked purpose he meditated, and which he soon after put into fatal execution, by taking the life of a minister of the law, who was quietly and firmly undertaking to vindicate its majesty in the arrest of defendant charged with trampling it under foot. The language of Judge Agnew in *Brooks v. Commonwealth*, 61 Pa. St. 352, may not be inappropriately applied here : " The felon, conscious of his crime, has no just provocation ; he knows his violation of law, and that duty demands his capture. Then passion is wickedness, and resistance crime. Neither reason nor law accords to him that sense of outrage which springs into a mind unconscious of offense, and makes it stand in defense of personal liberty."

There is nothing in the objection that deceased was not directed by his principal to execute the warrant when

11. THE DUTIES OF A DEPUTY MARSHAL. it was put in his hands. When he received it, his duty to execute was imposed by law, which he was bound to obey.

The objection, that the indictment was preferred by a

grand jury of twelve, is answered in the case of the *State*

12. A GRAND JU-
RY.

*v. Dearing*, 65 Mo. 530.* The law has been complied with in the trial, and the evidence fully sustains the conviction, and the judgment will therefore be affirmed, the other judges concurring, except Judge Hough, not sitting.

                                                   AFFIRMED.

*The opinion filed in Dearing's case does not show that this point was decided.   The reporter is, however, informed that it was made in the oral argument and was overruled on the spot.