State *v.* Jennings.

———— ·•●•· ————

THE STATE, Respondent, *vs.* JENNINGS, Appellant.

1. In a criminal case, the supreme court will not reverse because irrelevant evidence was allowed to go to the jury, if it could not have prejudiced the accused.

2. Every deliberate and intentional homicide is murder in the first degree.

3. One good count in an indictment will support a general verdict, no matter how many defective counts there may be.

*Appeal from Buchanan Circuit Court.*

*Hayden*, for appellant.   1. No sufficient foundation was laid for the admission of the threats of Copeland.   There was no proof of a previous conspiracy or confederacy to perpetrate the outrage upon Willard.   3 Chitty's Criminal Law, p. 1143 and

State *v.* Jennings.

authorities referred to. 1 Phillips' Ev. 88. 2 Starkie's Ev. 141. *Commonwealth* v. *Crowninshield*, 10 Pick. 497. 1 Greenleaf's Ev. §110, §111. 2 Peters, 364. 2. The first instruction given for the State is erroneous. The *assistance* and *aid* must have been wilful, deliberate and premeditated on the part of Jennings. The instruction does not exclude the idea that the aid and assistance might have been such as would not make the defendant guilty of murder. 3. The second instruction given for the State is wrong. Malice must have existed not only *at the time* of, but *before* the killing. 4. The third and fifth instructions given for the State are wrong, because there is no evidence to sustain them. 5. The sixth instruction is contrary to the principle decided in *Bower* v. *The State*, 5 Mo. Rep. 379, 380. 6. The defendant's first, second and third instructions ought to have been given. Also the fourth. "Whipping," as that word is used in common parlance, is a misdemeanor and not a felony. His fifth and sixth instructions also should have been given. The instruction given by the court, on its own motion, does not cure the errors. 6. The judgment ought to have been arrested, because it does not appear upon which count in the indictment the jury found a verdict.

*Gardenhire* (attorney general,) for the State. 1. The verdict is supported by the law and the evidence. The evidence applied to the law, as given by the court, presents a clear case of murder in the first degree. 2. The testimony admitted by the court was proper. Where several persons are proved to have combined together for the same illegal purpose, any act or declaration of one is evidence against all. 1 Phillips on Ev. 94, 95. Cowen & Hill's notes, p. 176 and following. 3. The instructions given contain a fair exposition of the law applicable to the whole case, and the appellant could not have been injured by the refusal of those asked by him. 4. The judgment cannot be arrested for the failure of the jury to specify, in their verdict, upon which count it was found. R. C. 1845, 869, sec. 17, fourth clause. 5. A general verdict, though all

State *v.* Jennings.

the counts are bad but one, is sufficient. In this respect, there is an essential difference between civil and criminal cases. 1 Chitty's Crim. Law, 639. *Hudson* v. *The State*, 1 Blackf. Rep. 319.

RYLAND, Judge, delivered the opinion of the court.

The defendant, Augustus Jennings, was indicted with William Langston, David Jones and Burr Anderson, for the murder of one Edward H. Willard, at the November term of the Circuit Court for Buchanan county, in the year 1852.

At the March term of said Circuit Court, in the year 1853, the defendant, Jennings, was tried separately, and was found guilty of murder in the first degree. He moved for a new trial, assigning therefor the usual reasons, which was refused. He then moved in arrest of judgment, which motion being overruled, the defendant excepted, and filed his bill of exceptions, prayed for an appeal, which was allowed, and brings the cause before this court.

The principal matters assigned here, and relied upon for a reversal of the judgment of the court below, are the admission of illegal and improper evidence, and the giving and refusal to give instructions to the jury as to the law of the case. The evidence shows that the killing of Willard was in a most cruel manner. He was tied to a tree and whipped to death. It may be seen from the evidence preserved in the record, that this act was in course of perpetration some five or six hours—from eight or nine o'clock in the morning, until two or three o'clock in the afternoon of the 27th day of July, in the year 1852, within a short distance of the city of St. Joseph, in Buchanan county. On the morning of the day Willard was killed, the defendant, Jennings, in company with Langston, Anderson and Willard, and probably another, were seen going up towards the grave yard, near the town of St. Joseph—Jennings having previously purchased a cow hide and rope.

The day before Willard was killed, many threats were made

at a public gathering at the railroad depot, in St. Joseph, about whipping him. There was an auction at the depot; at this auction, Willard was present and bid for some article; upon his bidding arose the conversation or remarks of a man named Copeland, which were given in evidence by the witness, James A. Owen, and which form the ground of the principal objection to the evidence offered in the case, on the part of State, by the defendant.

1. The objection to the giving of the remarks of Copeland in evidence, has more weight than any other taken, and should this be overruled, it will not be necessary to notice the rest, as the whole of the objections depend upon the same principle. It will be necssary, therefore, to notice this particularly. The witness, James A. Owen, said: "I was at the railroad depot on the 26th day of July—the day before Willard was killed. I did not see the difficulty between Harding and Willard. There were many threats made there, such as cowhiding his guts out. Langston stated that he had a cowhide at home that would *make the wine come*. Copeland was in a great rage. In a loud voice Copeland charged him with being a swindler, that he ought to have his guts lynched out. Willard bid for some article and Copeland turned around and said to him, "have you got the money for it?" Willard replied, "I have." Copeland then said, "God damn him, if it was not for the law I would murder him;" "that he ought to be lynched to death." I heard Copeland charge that Willard had seven hundred dollars hoarded up at home. Witness did not hear Jennings say any thing. Witness says that when the threats were made, his best impression is, that Jennings was on the ground. Next day, saw Willard dead in the bushes, near the grave yard; examined the red-bud tree; found marks upon the tree about as high as a man's face. The testimony objected to, commences with the word "threats," and ends with the word "home." Copeland was not one of the persons indicted. His remarks, therefore, were not properly evidence, and on objection urged, they should have been rejected; but they could

State *v.* Jennings.

not operate to the prejudice of the defendant, however they might to the prejudice of the State. The natural effect of these remarks of Copeland was to induce the jurors to believe that the deceased was deserving of some great and severe punishment, and to palliate the charge against the defendant. This court cannot see how it was possible to prejudice the jurors against the accused. The circuit attorney might have interfered and objected to such evidence, because its obvious tendency was to create an unfavorable impression against the deceased, and in favor of the defendant; and for such evidence, though irrelevant, where no injury or harm could be done to the prejudice of the accused, this court will not reverse.

It was proper and competent to offer the threats of Langston, and of the other persons indicted, showing a common design to do the injury.

In looking over the record of the proceedings of the Circuit Court, I find the evidence of the witnesses all given once before the jury, without any objection or exception by the defendant; and in another part of the record, I find the same testimony of the witnesses again set down, and objections and exceptions taken to it. I have looked at the evidence as though it had been excepted to, and our opinion is, that the exceptions cannot be maintained. There is no error, then, in the admission of the evidence in this case.

It is not deemed necessary to spread out the whole evidence in this case in the opinion; such facts though as may show that the jury have come to a proper conclusion, may not be improperly here set forth.

The testimony shows that Willard was whipped to death; that this whipping was continued several hours; that the defendant was one of the persons concerned and engaged in this whipping : that, while the parties were engaged in this business, one of them went to Willard's house, with an order from him to his wife for seventy-five dollars; that she was told it would be better to raise the money. None was obtained, and

the party went back again towards the grave yard; that on the day Willard was killed, between nine and twelve o'clock in the forenoon, Jennings, the defendant, went two or three times to a tavern for water and whisky, and started back again up towards the grave yard; that three or four men were seen in the brush, near the grave yard, whipping a man, who was hallooing while they were whipping him: the back of the person thus undergoing the lash, looked, in the words of the witness, as though a handful of blackberries had been rubbed on it. After five or six minutes the whipping ceased; witness turned off and then heard the lash again, and the cries of the sufferer again; that the body of Willard, when found, about three or four o'clock in the evening of the day he was killed, had been dragged from the place or tree where it was supposed he had been whipped to death, about thirty yards, and covered up with brush; that it was lacerated and bruised very much.

One of the physicians, who testified, said, "the general portions of the body were mutilated, there not being a quarter of an inch of the body sound and unmutilated; had no doubt the wounds produced death." Another physician said, "I went out and found the dead body of Willard in the brush; it had evidently been covered with brush; the body was lacerated and bloody; he appeared to have been badly whipped from his neck to his knees. Willard, in my opinion, died from the effect of the flagellation; his back, breast and belly were badly lacerated, and the wrists were bruised, and had the marks of manacles or handcuffs on them; discovered considerable blood on the ground under Willard's head."

One of the persons indicted with the prisoner, in company with the prisoner, on the evening of the day Willard was killed, told a witness, by pointing out on his hands, two hundred and fifty or three hundred and fifty lashes—said, "yes, we did;" said he was a mere spectator, until Willard accused you, (that is, witness.) I then, (said he,) took a stick and hit him on the head. The tree where this man was whipped to death had marks of the friction of a rope, and there were

plenty of withes that had been used at the tree.   One of the persons indicted got a pair of handcuffs, and then started on to overtake Langston, Jones, Jennings and Willard.   Upon the whole of the evidence, there can not be a doubt but that the jury was fully warranted in finding their verdict.

Upon the evidence, the court below gave the following instructions :

1. If the jury believe from the evidence, that Edward H. Willard was wilfully, deliberately and premeditatedly killed in the month of July last, in this county, and that Jennings, the prisoner, was present, aiding and assisting, they will convict.

2. The deliberation and premeditation necessary to constitute murder in the first degree, may be inferred from the circumstances connected with the killing ; and if malice existed, it is sufficient.   It is not necessary to prove the length of time it existed.

3. All present at the time of committing the offence, are principals, although they do not all act, if they are confederates and engaged in a common design; nor is it necessary to prove that Jennings, the prisoner, was present at the time of the killing ; it is sufficient, if he was near enough to countenance what the others were doing—wait upon, or stand watch for them, or readily come to their assistance, if necessary ; nor is it necessary to prove that he struck any of the blows—the blow of one is the blow of all.

4. Any or all of the above points may be established by circumstances.

5. If the evidence shows a conspiracy or concert between the prisoner and Jones, Langston and Anderson, to injure Willard, then all the threats made by either of them, in relation to such injury, are legal evidence against the prisoner.

6. If the jury believe from the evidence, that it was not the intention of those concerned in lynching Willard, to kill him, but that they did intend to do him great bodily harm, and that in so doing death ensued, such killing is murder in the first degree, by the statute of this state.

The following instruction, asked by the State, was refused :

7. The law holds every man to intend to do that which is the consequence of his acts ; and if the intention was not to kill in the case at bar, it devolves upon the defendant to show it by proof.

The following instructions, asked by defendant, were refused.

1. That, unless they believe from the testimony, that the defendant was present when the deceased was killed, and had an agency in bringing about his death, or was present aiding, assisting or encouraging others, who did effect and bring about the death of Willard, the deceased, they will find the defendant not guilty.

2. If the jury should believe from the testimony, that the defendant was present, aiding others, when Willard was killed, they must also believe from the testimony, that he was present for the purpose of killing, or assisting to kill Willard, the deceased, before they can find him guilty of *murder* in either the first or second degree.

3. If they believe from the testimony, that the original design was to whip, but not to kill Willard, but that the purpose to kill was conceived after the whipping commenced, they must believe from the testimony, that the defendant participated in such purpose before they can find him guilty of murder in either the first or second degree.

4. That the whipping another is, in law, a trespass and misdemeanor, and not a felony.

5. The killing of a human being, without design to effect death, while such other is engaged in *the perpetration* of any crime or misdemeanor not amounting to a felony, shall be manslaughter in the first degree.

6. That the involuntary killing of a human being, by the act of another, whilst such other person is engaged in a trespass, shall be deemed manslaughter in the third degree.

7. That the jury may find the defendant guilty of any of the four degrees of manslaughter, or acquit, as the evidence may warrant.

The court, of its own accord, gave the following instructions :

1. The State must prove the charge as laid in the indictment, or the jury must acquit.

2. If the jury should believe from the testimony, that the prisoner went with Langston and others, without any intention on his part to commit a felony, or do Willard great bodily harm, and Langston and others killed Willard, or intended to do Willard great bodily harm, and in carrying out said intention death ensued, without the consent and aid of prisoner, they will acquit. Presumption, to justify conclusion of guilt, must be reasonable, and flow necessarily from facts proved in the case.

2. From the instructions which the court gave, it is the opinion of this court, that the law was fairly and properly laid down to the jury, and the instructions which were refused, were properly refused ; these did not tend, nor was it their object to guide or instruct the jury to a proper conclusion of the facts and law of the case.

In looking over the instructions, those numbered one and six, asked and given for the State, have been pointed out by the counsel for the defendant as most objectionable. As to the first instruction given, this court is of opinion, that such is the law, clearly and frequently laid down in criminal trials. If the party killing had time to think, and did intend to kill for a minute, as well as for an hour or a day, it is a deliberate, wilful and premeditated killing, constituting murder in the first degree, within the act of assembly in Pennsylvania, (which is like ours.) See *Com.* v. *Richard Smith*, Oyer and Term., Philad. 1816.

Wherever it appears from the whole evidence, that the crime was *at the moment*, deliberately or intentionally executed, the killing is murder in the first degree.

Where the deceased was killed by means of blows inflicted by a club, not quite as thick as an axe-handle, held and used by one person, and by a leather strap, with a metal buckle at each end, held and used by another person, it was held that this was

murder in the first degree. *Com.* v. *Murray*, Ash. 41. Whar. Dig. Crim. Law, 327, sec. 78.

The sixth instruction is correct under the statute of this state. See Crimes and Punishments, R. C. 1845, sections 1 and 38. Homicide committed in the attempt to perpetrate any arson, rape, robbery, burglary or *other felony*, shall be deemed murder in the first degree. The thirty-eighth section makes the person by whose act or procurement *great bodily harm* has been received by another, guilty of what is, by our law, called a felony ; that is, guilty of such an offence as may be punished by imprisonment in the penitentiary.

In the opinion then, of this court, there is no error in the act of the court, in refusing instructions or giving instructions in this case.

3. There is nothing in the objection about a general verdict, or of one defective count. One good count in an indictment is sufficient to support a general verdict, no matter how many defective counts there may be in the indictmet. This case presents the act of whipping a man to death, with the deliberation of previously going from one store to another in order to purchase a cowhide and a rope—hiding the cowhide by thrusting it down his bosom—walking along with the victim through the streets of a considerable town—attracting the attention of persons by the previous threats against the victim—borrowing a pair of manacles—going two or three times for a fresh supply of whisky and water, while perpetrating the deed—hiding the body under brush to conceal it—engaged in this merciless transaction for hours, nearly the half of a day in July. Is it strange that a jury of intelligent men should, in such a case, find the actor, on trial before them, guilty of murder in the first degree ?

Let the judgment below be affirmed; the judges of the court all concurring.