## THE STATE v. SHOCK, *Appellant.*

1. **Juror**: IMPEACHMENT OF VERICT. A juror will not be allowed to impeach his verdict by his affidavit that he would not have found the defendant guilty, if he had known that the punishment fixed by law for the crime charged was death.

2. **Murder**: Section 1, p. 445 Wagner's Statutes, provides that every murder  *   *  which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary *or other felony* shall be deemed murder in the first degree. *Held,* that the words "other felony" here refer to some felony collateral to the homicide, and not to those acts of personal violence to the deceased which are necessary and constituent elements of the homicide itself. They are merged in it, and do not, when consummated, constitute an offense distinct from the homicide. Section 33 p. 450, Wag. Stat., makes them a felony only when death does not ensue. Hence, where a homicide results from blows given willfully and maliciously and with intent to inflict great bodily harm, but without the intent to kill, it does not constitute murder in the first degree. NORTON, J. and SHERWOOD, C. J., dissenting.

*Appeal from Callaway Circuit Court.*—HON. G. H. BURCK-HARTT, Judge.

*Warner Lewis* for appellant.

1. Instruction four is a literal copy of the sixth instruction in *State v. Jennings*, 18 Mo. 442. That case and the one at bar are dissimilar, and as that instruction is an innovation of the common law, the ruling ought not to be extended. In every killing which is not excusable or justifiable homicide, this instruction may with equal propriety be given, and if its latitude be not circumscribed, then by the phrase " other felony " in Wag. Stat., sec. 1, p. 445, relating to crimes and punishments, section 2 of the same article would be rendered nugatory, for a conviction of murder in the first degree might be had in every offense intended to be included in section 2. This instruction is inconsistent with the other instructions given for the State. Malice, ill-will, premeditation, &c., the constituent elements of murder in the first degree, are totally ignored. 2. The affidavit of the juror was offered, not for the purpose of showing misconduct on the part of any of his fellows, but for the purpose of showing mistake on his own part; and therein the case differs from any heretofore decided by this court.

*Edwin Silver* for appellant.

The instruction is wrong. It ignores the instrument with which and the manner in which the whipping of the child was done. The evidence shows that Shock was *in loco parentis*, and, therefore, could lawfully chastise the child. The killing was, therefore, manslaughter, unless it was done with an instrument and in a manner likely to produce death; and because the instruction ignores these elements it is defective and vicious. Under the instruction, whipping with a small switch or an instrument altogether

unlikely to produce death, if death ensued, would warrant the jury in finding a verdict of murder in the first degree. The instruction is simply to the effect that if great bodily harm was intended, and death ensued, it must be murder in the first degree, no matter if the whipping was done witn the most harmless instrument. See East Pleas of Crown, p. 261; Foster Crim. Law, p. 262, § 4. The evidence shows the instrument to have been a stick about the size of one's thumb at one end, and several feet long, certainly not a dangerous weapon; but even if it were such, still its character and the manner of the beating should not have been ignored in the instruction. *State v. Mitchell*, 64 Mo. 191 ; *State v. Linney*, 52 Mo. 42. It was altogether a question for the jury whether the instrument with which the killing was done was a dangerous weapon, or the instruction is vicious because in conflict with the *Sloan case*, 47 Mo. 615.

It ignores willfulness, deliberation, &c., and it is contended that this is no error, as the defendant was committing another felony, viz : great bodily harm, and the *Green case*, 65 Mo. 648, and the *Jennings case*, 18 Mo. 435, are relied on in support of this position. In the *Green case* the defendant was guilty of a felony in resisting the officer who had a warrant for his arrest on a charge of felony, and the instruction was, therefore, correct for that reason. See Wag. Stat., § 18, p. 479. The statute defining murder in the first degree evidently contemplated that the "other felony" should be one different from violence to or upon the person killed; otherwise we could not have any murder in the second degree, or any of the degrees of manslaughter, for murder in the second degree, or manslaughter involves an assault or great bodily harm to the person injured, and, death ensuing therefrom, we would always have murder in the first, and never murder in the second degree or manslaughter. So the mere attempt to do great bodily injury without deliberation, willfulness or intent, would always make murder in the first degree. Why re-

quire an instruction to contain willfulness, deliberation, &c., in defining murder without the elements of great bodily harm, and on the other hand require neither of them where that element is made a part of the instruction? The result is simply this, as every murder in the first degree involves great bodily harm, there need only be an instruction on that element, and willfulness, premeditation, &c., may be ignored in every case. The boundaries and distinction between murder in the first and second degrees cannot exist if the elements of premeditation, willfulness, &c., are ignored. We, therefore, contend that the "other felony" in the statute must be other than violence to the person injured. *State v. Sloan*, 47 Mo. 614; *People v. Butler*, 3 Parker's Crim. cases 377; *People v. Rector*, 19 Wend. 605. In the *Rector case* Judge Bronson supports the view above contended for, while Judge Cowen takes a different view, holding that if the defendant did not intend death, then it was a felony within the contemplation of the statute. But under this view murder in the first and second degree would be confused. A man under circumstances that would be but murder in the second degree, might intend great bodily harm, and how could it be determined which degree of murder it would be. Judge Bronson, a name of equal if not of greater weight in criminal law, pronounces in favor of the view we contend for. So does the court in 3 Parker's Crim. cases, 377. So does this court in the *Sloan case*, which overruled the *Jennings case*, and was the law till the *Green case*; but the instructions in the *Green case* were good for the other reason above stated.

*J. L. Smith*, Attorney-General, for the State.

The thirteenth instruction was a correct definition of the crime of murder in the first degree under our statute, and the cases construing it. Section 1, p. 445 of Wag. Stat., provides that "every murder which shall be com-

mitted    *    *    in the perpetration or attempt to perpetrate any felony, etc., shall be deemed murder in the first degree." Section 33, p. 450 of Wag. Stat., makes the person by whose act or procurement great bodily harm is caused to another, guilty of a felony.  So that when the defendant beat the deceased with " intent to do him great bodily harm," he was guilty of a felony, and if the deceased died from the injuries received during such whipping, the defendant is guilty of murder in the first degree. *State v. Jennings*, 18 Mo. 435; *State v. Green*, 66 Mo. 631. But the defendant now insists that this instruction cannot apply here, because he stood *in loco parentis* to the deceased, and therefore had a right to chastise him; and that if he died from the effect of such chastisement, the crime was manslaughter only.  It will be sufficient to state that not a scintilla of evidence appears tending to show that the deceased was a son, or a ward, or a pupil of the defendant, nor any other facts which show the defendant to have stood *in loco parentis* to the deceased.  The defendant was on the stand in his own behalf, and if any such relation had existed, could very easily have stated it.

*L. W. McKinney* for the State.

Instruction No. 13 given for the State is the law. *State v. Jennings*, 18 Mo. 435 ; *State v. Green*, 66 Mo. 631. Under our law every homicide committed in the attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree.  The attempt to do great bodily harm, is, under our statutes, a felony.

HOUGH, J.—At the May term, 1878, of the circuit court of Callaway county, the defendant was indicted for murder in the first degree for the killing of one Robt. Scott.  At the November term following, he was tried and found guilty and sentenced to be hanged.  Stay of execution was awarded, and the case has been heard here on

appeal.    The evidence on the part of the State tended to
show that on the 6th day of March, 1878, the defendant
beat the deceased, who was a boy between five and six
years of age, with a piece of sycamore fishing-pole, about
three feet long and one and a half inches in diameter, for
some minutes, accompanying his beating with oaths; that
he left the room in which he was beating the boy, went
into the yard, procured a piece of grapevine about one and
one-fourth inches in diameter, returned to the house and
resumed the beating, which lasted in all about fifteen
minutes.    During the beating the child did not scream or
cry, but groaned and moaned, and after several days, died
of the injuries so received at the hands of the defendant.
An inquest was held, at which the body was examined.
The child's head was found to be covered with bruises, its
back beaten to a jelly and its skull fractured.    On the part
of the defendant evidence was introduced tending to show
that the deceased was very weakly and sickly; that the
defendant did not beat it on the day named, and that the
wounds on its head were caused by its falling down stairs.
The deceased was a son of a cousin of the wife of the de-
fendant, and it appears that it had been at the house of
the defendant for about two months, but whether as a
visitor or otherwise, the record does not show.

In support of the motion for a new trial an affidavit
of one of the jurors was filed, which stated in substance,
1. JUROR: im-
peachment of that while the jury were considering their
verdict.        verdict, he was of the opinion that the case
was not one in which capital punishment should be inflict-
ed, but he was induced to believe that the court had the
power to inflict a less degree of punishment; that he and
others of said jury were opposed to rendering a verdict in
said case that would result in the death of the defendant.
It will be sufficient to say on this point that a juror will not
be allowed to impeach his verdict on the ground that he
would not have found the defendant guilty if he had
known that the punishment fixed by law for the crime

charged was death. The nature of the punishment had · nothing to do with the guilt or innocence of the defendant.

The only question of importance presented for our determination, arises upon the action of the court in giv-
2. MURDER      ing, at the instance of the prosecuting attorney, the following instructions:

4. " To constitute murder in the first degree, it is not necessary that the fatal beating, wounding or striking be given with the specific intent to kill; it is sufficient if it be given willfully and maliciously, and with the intent to inflict great bodily harm, and death ensue."

13. " If the jury believes, from the evidence, that it was not the intention of the defendant to kill the child Scott, by whipping him, but that he did intend to do him great bodily harm, and in so whipping him, death ensued, he is guilty of murder in the first degree." .

It is contended on behalf of the State that the foregoing instructions were fully warranted by the decision of this court in the case of the *State v. Jennings* (18 Mo. 435), and in the *State v. Green* (66 Mo. 631). In the case first named, which was a most atrocious case of lynching, the infliction of which was continued for several hours, under circumstances of the greatest cruelty and brutality, there was no occasion for any effort on the part of the State to make a case of constructive murder in the first degree, as the facts of the case justified the jury in finding the defendant guilty of a willful, deliberate and premeditated killing. The following instruction, however, was given in that case: 6. "If the jury believe from the evidence that it was not the intention of those concerned in lynching Willard, to kill him, but that they did intend to do him great bodily harm, and that in so doing death ensued, such killing is murder in the first degree by the statutes of this State." Judge Ryland, who delivered the opinion of this court, approved this instruction in the following language : " The sixth instruction is correct under the statutes of this

State (see Crimes and Punishments, R. C., 1845, § 1, 38). Homicide, committed in the attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree. The 38th section makes the person by whose act or procurement, great bodily harm has been received by another, guilty of what is by our law called a felony; that is, guilty of such an offense as may be punished by imprisonment in the penitentiary."

There are two errors in the foregoing extract, which will be made patent by reciting the two sections of the statute referred to. Section 1 is as follows: " Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree." Section 38, now section 33, is as follows: " If any person shall be maimed, wounded or disfigured, or receive great bodily harm, or his life be endangered by the act, procurement or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter, if death had ensued, the person by whose act, procurement or negligence such injury or danger of life shall be occasioned, shall in cases not otherwise provided for, be punished by imprisonment in the penitentiary," &c.

It will be observed that the statute does not say that every homicide committed in the manner therein pointed out, shall be murder in the first degree, but that every murder so committed, shall be murder in the first degree. The object of the first and second sections of the statute, is to divide the crime of murder into two degrees, and they deal with that crime as it existed at common law. This is made manifest by the language of the second section, which is as follows: " All other kinds of murder at common law, not herein declared to be manslaughter, or

justifiable or excusable homicide, shall be deemed murder in the second degree." So that in every case under the first section, the first, though not the sole, inquiry to be made is, whether the homicide was murder at common law; if not, it cannot be murder in the first degree under the statute. Wharton on Homicide, § 184. At common law a homicide committed in the willful and malicious infliction of great bodily harm was murder, though death was not intended; but this was not so because such infliction of great bodily harm was in itself a felony, in the perpetration of which the homicide was committed, but because such infliction of great bodily harm was an act *malum in se*, and the party was, therefore, held answerable for all the harm that ensued. Foster, 259. But as such a homicide, death not being intended, is not a willful, deliberate and premeditated killing, and is not a murder committed in the perpetration or attempt to perpetrate any of the felonies specially designated in the first section, but a simple unintentional killing only, it has been universally classed as murder in the second degree, in those States having statutes identical with our own, with the exception of the words, " other felony." Wharton on Homicide, §§ 40, 190. But as murder in the second degree with us comprehends only such homicides as are intentional but without deliberation, it cannot be so classed in this State. *State v. Wieners*, 66 Mo. 11. How it shall be classed under our statute must depend upon the construction to be given to the words " other felony," in the first section. This brings us to the second error in the statement of Judge Ryland.

This error, which is the most important one, so far as the present case is concerned, consists in the declaration that the thirty-eighth (33) section makes the person by whose act or procurement great bodily harm has been received by another, guilty of felony. This is a very grave error. As before stated, the bare infliction of great bodily harm was not a felony at common law, and it is not made so by statute. The statute says if any person shall receive

great bodily harm by the act, procurement or culpable neg-- ligence of another, " in cases and under circumstances which would constitute murder or manslaughter, if death had ensued, the person by whose act, procurement or negli- gence such injury   *   *   shall be occasioned, shall   *   *   be punished by imprisonment in the pen- itentiary," &c., that is, shall be guilty of a felony, and punished as therein prescribed, if death does not ensue. Now, upon the supposition that this felony is one contem- plated by the words "other felony" in the first section, let us add this qualification to the thirteenth instruction given in this case, and see what its legal effect will be. The in- struction will then read as follows: "If the jury believe from the evidence that it was not the intention of the defend- ant to kill the child, Robert Scott, by whipping, but that he did intend to do him great bodily harm, under circum- stances which would constitute murder or manslaughter, if death ensued, and, in so whipping him, death did ensue, then he is guilty of murder in the first degree." Would not such an instruction as this present a palpable contra- diction on its face? If the circumstances under which the bodily harm was inflicted were such as to constitute the offense of manslaughter, if death ensued, by this instruc- tion it is, nevertheless, declared to be murder in the first degree. The language adopted in the supposed instruction is, of course, not such as would be used to a jury, as it presents a question of law, but it is pertinent and proper thus to bring together the two provisions for the purpose of determining the construction of the statute. It would seem, therefore, that the offenses mentioned in the thirty- third section are not such as are meant by the words "other felony" in the first section.

We are of the opinion that the words "other felony" used in the first section refer to some collateral felony, and not to those acts of personal violence to the deceased which are necessary and constituent elements of the homicide itself, and are, therefore, merged in it, and which do not,

36—68

when consummated, constitute an offense distinct from the homicide. (Wharton on Homicide, §§ 55, 56, 57, 58, 62.)

Again, the first section declares that all murders committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, burglary or other felony, shall be murder in the first degree. As this section, as before shown, includes only such murders as were murders at common law, it may well be doubted whether the words "other felony" can be held to include offenses which were not felonies at common law. This point, however, we do not now decide, it being unnecessary in the present case. But the statute evidently contemplates such "other felony" as could be consummated, although the murder should also be committed. It says murders "committed in the perpetration, or attempt to perpetrate," any felony. It were absurd to say that there could be an attempt to perpetrate a felony which could not be perpetrated. The statute, therefore, must refer to such felony as may be perpetrated, although the murder is committed. The arson, rape, robbery, burglary may each be perpetrated and the murder also be committed. But when great bodily harm has been inflicted, and death immediately or speedily ensues therefrom, what felony has been committed, either at common law or under our statutes, in addition to the murder? The infliction of great bodily harm is, by the statute, only made a felony when death does not ensue, and when, if it had ensued, the whole offense, including the infliction of the bodily harm, would constitute either murder or manslaughter; but whether murder or manslaughter, would have to be determined by the circumstances of the case, as in other cases of personal violence terminating in death, when the same was not inflicted in the perpetration or attempt to perpetrate some collateral or independent substantive crime. (*Kelly v. Commonwealth*; 1 Grant's cases, 487.) If the instruction given in this case can be upheld, it will convert many cases of unintentional killing, which are manslaugh-

ter only under other provisions of the statute, into murder in the first degree.

These views are in accordance with the construction placed by this court upon an analogous provision of the statute, relating to inferior grades of homicide. The statute defining manslaughter in the first degree is as follows: "Section 7. The killing of a human being without a design to effect death by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or the attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases where such killing would be murder at the common law, shall be deemed manslaughter in the first degree." It was held by this court in the case of the *State v. Sloan*, 47 Mo. 604, that the foregoing section contemplates some other misdemeanor than that which is an ingredient in the imputed offense, otherwise that part of it relating to an attempt to perpetrate a misdemeanor would be wholly nugatory; that where an act becomes criminal from the perpetration or the attempt to perpetrate some other crime, it would seem that the lesser could not be a part of the greater offense. (*Vide, The People v. Butler*, 3 Parker's Crim. Rep. 377; *People v. Skeehan*, 49 Barb. 217; *People v. Rector*, 19 Wend. 605.)

On the facts of this case, we think the jury might properly have been instructed as to the law of murder in the first degree, on the theory of a willful, deliberate and premeditated killing, and also as to the law of manslaughter in the fourth degree. It was to be expected, of course, that the circuit court would, in passing upon the instructions presented at the trial of this case, be governed by the decision of this court in the case of the *State v. Jennings*; but the doctrine of that case and of the case of the *State v. Nueslein*, 25 Mo. 111, in so far as it conflicts with our opinion in this case, is overruled. There is no conflict between this case and the case of the *State v. Green* (66 Mo. 631). In the latter case the defendant, at

the time of the homicide was resisting an officer under circumstances which made such resistance a collateral felony, both at common law and under the statute. True, the *Jennings case* was cited in support of instructions numbered 3 and 4, given for the State in that case, which omitted the elements of deliberation and premeditation; but those instructions were unlike the sixth instruction in the *Jennings case* and the thirteenth instruction in the case at bar, and are in conformity with this opinion. Neither of them declared that if the defendant did not intend to kill the deceased, but did intend to inflict upon him some great bodily harm, he was guilty of murder in the first degree. The person killed by Green was an officer who had a warrant for his arrest on a charge of felony, and instructions 3 and 4, above referred to, were to the effect that if the deceased read such warrant to the defendant or notified him of his authority to arrest him, and the defendant killed the deceased in resisting such arrest, he was guilty of murder in the first degree. Those instructions were undoubtedly correct, for the reasons heretofore given. The difference between that case and the present one is apparent. The judgment will be reversed and the cause remanded. NAPTON and HENRY, JJ., concur; SHERWOOD, C. J., and NORTON, J., dissent.                 REVERSED.

HENRY, J., CONCURRING.—The obvious meaning of section 1, art. 2, of the act in relation to crimes and punishments, is that every homicide committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or other felony, which was murder at common law, should be deemed murder under that section, and classed with those murders committed by means of poison, lying in wait, etc. It was not intended to enlarge the class of constructive murders, but only to recognize those designated, and assign them their places in the classification made by that section. If the construction contended for by the State prevail, it will nullify many

provisions of the criminal code. For instance: "Every. person who shall administer to any woman, pregnant with a quick child, any medicine, drug or substance whatsoever, or shall use, or employ any instrument, or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by a physician to be necessary for that purpose, shall, if the death of such. child, or the mother thereof, ensue from the means so employed, be deemed 'guilty of manslaughter in the second degree." Wag. Stat., § 10, p. 447. If one administer medicine or employ other means, with the intent to destroy the child and the death of the mother ensue from the means so employed, the offense, by the express terms of the statute, is manslaughter in the second degree: yet, under the construction placed upon the first section in the *Jennings case*, as the homicide was committed in the perpetration of a felony, it would be murder of the first degree, notwithstanding the statute expressly declares that it shall be manslaughter in the second degree.

If one assault another with intent to kill, he is guilty of a felony under Wag. Stat., sec. 32 p. 449. If the assault be premeditated, but not deliberate, and death ensue, the offense would be murder of the second degree. If made in a heat of passion, it would be manslaughter, unless the doctrine of the *Jennings case* be correct, under which it would, in either case, be murder in the first degree, because the commission of the homicide was in the perpetration of a felony, thus making what was manslaughter at common law, and murder in the second degree under our statute, murder of the first degree, a result not to be thought of but with abhorrence.

If when great bodily harm is inflicted, under circumstances which, if death ensue, would constitute the offense manslaughter, the offense is to be transformed into murder by construction, how is the 32d section to be distinguished · from the 33rd in the application of the construction placed

upon the 1st and 33rd sections in the *Jennings case*? Every assault with intent to kill, provided for in section 32, if death ensue, must also be transformed into murder of the first degree, whether such killing would be murder of the second degree or manslaughter, under other provisions of the statute. I have selected these from many selections of the criminal code, which illustrate the force and conclusiveness of the argument of my associate who delivered the opinion of the court. If one be indicted under the 33rd section for inflicting great bodily harm, it would be necessary for the jury to find, whether, if death had ensued, the party would have been guilty of murder or manslaughter. If the circumstances were such that, if death had ensued, the accused would have been guilty of either murder, or manslaughter, it would be the duty of the jury to find him guilty of the felony defined by that section. If, however, death ensued, no case would exist for a prosecution under that section, because then the offense would be murder or manslaughter, or excusable or justifiable homicide according to the circumstances under which the homicide was committed, without regard to the second subdivision of section 1. Section 33, by its very terms, recognizes the law to be, that one intentionally inflicting great bodily harm upon another may, if death result, be guilty of murder or manslaughter, the grade of the offense to be determined by the circumstances attending the act, yet the construction contended for utterly denies that, if one intentionally inflict great bodily harm upon another and without intending it, kill him, he can be guilty of any crime but murder of the first degree.

It is clear from the whole scope and spirit of the act that it was intended to mitigate the severity of the common law in regard to murder, but this construction of the first section would make our code more severe. The substitution of the words " neither excusable nor justifiable," for the words " which would constitute murder or manslaughter " in section 33, perverts the meaning of the section

and expunges that portion which brings it in conflict with section 1. The words "neither justifiable nor excusable" are not equivalent to the words of the statute, "which would constitute murder or manslaughter, if death had ensued," and such substitution is calculated to mislead and draw attention from the real questions under discussion. We have to deal with the section as it is, not as it might have been. The section does not make the infliction of great bodily harm a felony when not excusable or justifiable merely; but to constitute the offense a felony, it must also be inflicted "under circumstances which would constitute murder or manslaughter, if had death ensued." Section 33 not only contemplates cases where the infliction of great bodily harm would be neither justifiable nor excusable, but cases where, in the event of death, the offense would be murder or manslaughter under some other section. If the statute had provided for cases where the infliction of bodily harm was neither excusable nor justifiable, and where it was not declared by any statute to be either murder or manslaughter, there would be no conflict. If section 33 refers to cases where the homicide would be murder of the first degree, by the circumstances of the killing, there is no occasion to resort to the first section to make a case of constructive murder. If it refers to cases which, by the circumstances, would be murder in the second degree, or manslaughter in any degree, a conflict arises which nullifies the express terms of the statute and adds to the class of murders of the first degree almost as many constructive murders as there are sections of the statute defining manslaughter in the different degrees.

The *Jennings case* has been acquiesced in for a number of years, and was expressly approved and followed in the *Nueslein case*, 25 Mo. 111, and this fact, if the doctrine were not clearly wrong, should make this court hesitate to overrule it; but the principle of *stare decisis* does not obtain in criminal to the same extent as in civil cases. A number of adjudications one way, indicates that the law is as they

have adjudged it to be. In civil cases, where rights of property have been acquired under such decisions, they are adhered to, right or wrong. No such reason applies in criminal cases. That there have been many adjudications announcing the same doctrine on a given subject, is of force as an argument that they correctly declare the law, but I apprehend that men are not to be hanged, or imprisoned in the penitentiary on a clearly erroneous construction of a statute because many others have been so hanged or imprisoned. The doctrine of *stare decisis* has not always been reverently recognized by this court, even in civil cases. *Proctor v. The Hannibal & St. Jo. R. R. Co.*, 64 Mo. 112. Believing that the instruction given by the court, based upon the 33rd section, is palpably erroneous, I concur in reversing the judgment.

NORTON, J., DISSENTING.—As I do not concur either in the conclusion announced by the court, or in the reasoning on which it is based, and as the question involved is one of great importance, it is but proper that my reasons for dissent should be given. The main point of controversy grows out of the action of the trial court in giving the following instruction, viz.: "If the jury believe from the evidence that it was not the intention of the defendant to kill the child, Scott, by whipping him, but that he did intend to do him great bodily harm, and in so whipping him death ensued, he is guilty of murder in the first degree."

It may be announced as a principle well established that when a statute of another State having received judicial construction, is adopted in this State, it is usual and proper to give it the same construction there placed upon it. So, when a statute has been construed by this court, and it is subsequently re-enacted by the General Assembly without alteration or change in any respect, it is to be understood as having been enacted in the sense in which it has been judicially interpreted. The precise question

presented in this case first arose in 1853, in the case of *State v. Jennings*, 18 Mo. 435, and involved a construction of the same sections of the statute relating to murder in the first degree, and to the crime of inflicting "great bodily harm" upon another, and it was then held that if A intended to inflict .upon B great bodily harm, and in so doing death ensued, such killing was murder in the first degree, although A did not intend to kill B. The reason assigned for the conclusion reached was, that under section thirty-eight of the revised statutes of 1845, it was made a felony for one person to inflict great bodily harm upon another, under circumstances neither justifiable nor excusable, and that section one of the same statute, defining murder, declared that every homicide committed by another while perpetrating, or attempting to perpetrate any felony, was murder in the first degree. This construction was approved by the General Assembly in the revised statutes of 1855, when they re-enacted the same sections in the same words, and they again approved it in 1865, by re-enacting in the general statutes of 1865 the same sections without change.

The same question of construction again arose in 1857, in the case of *State v. Nueslein*, 25 Mo. 111, and the construction given to the sections in the case of *State v. Jennings*, was fully approved by an undivided court. The question again arose in the case of *State v. Green*, in 1877, and the above cases were fully sanctioned. The principle was again sanctioned in the case of *State v. Swain*, decided at the present term. I can not, therefore, consent to overthrow both such judicial and legislative construction of the statute relating to what is murder in the first degree, unless it be made clearly to appear, by adjudicated cases based upon the construction of a statute similar to our own, or by incontrovertible reasoning that such construction can neither be maintained on principle nor authority.

The authorities referred to for the purpose of demonstrating. that such construction is erroneous fall short of

establishing the proposition. The principal authority referred to is the case of *People v. Rector*, 19 Wend. 605. In that case the court was called upon to say whether the trial judge committed error in refusing to instruct the jury " that if they came to the conclusion that the prisoner inflicted the mortal wound upon the deceased in an attempt to commit an offense which of itself was less than a felony, then he should not be convicted of murder." This instruction was refused by the trial judge because, as he said, it " was inapplicable to the case." In disposing of the question thus presented, it became necessary for the court to consider two sections of the New York statute relating to murder and manslaughter in the first degree. That relating to murder declares a killing to be murder " when perpetrated by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." · That relating to manslaughter provided, as does our statute, " that the killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of any other, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to a felony, or in an attempt to commit any such crime or misdemeanor in cases where such killing would be murder at common law, shall be deemed manslaughter in the first degree." Each of the three judges composing the court delivered separate opinions on the point presented. Judge Cowen was of the opinion that the charge should have been given because the statute defining manslaughter was intended " to reduce the offense to manslaughter in the first degree in all cases where the jury shall find the assailant intended to stop with the commission of a misdemeanor although the blow were aimed at the person." 19 Wend. 593. Judge Bronson held that the charge was properly refused by the trial court because " such a charge could only be proper where the accused was committing, or attempting to commit, some other

offense than that of intentional violence upon the person killed." 19 Wend. 605. Judge Nelson expressed the opinion that the charge was properly refused because it withdrew from the consideration of the jury the higher offense of murder, under which it might fall under the provision of the statute which makes killing murder, " when perpetrated by any act imminently dangerous to others and evincing a depraved mind regardless of human life, although without premeditated design to effect death." He observes " that within this provision, the offense may be committed where the actual intent at the time may be to commit an offense under the degree of felony ; it may be simply to commit an assault and battery, and still if death ensue under the circumstances alluded to in the statute, the killing may be murder." He concludes by saying that " upon the whole he concurs in the conclusion, principally on the first point considered ;" this point related to the admissibility of evidence. So that of the three judges only one of them expressed the opinion that the crimes or misdemeanors alluded to in the section defining manslaughter in the first degree related to some crime or misdemeanor other than that of intentional violence upon the person killed. The case cannot, therefore, be properly quoted as an authority to establish the proposition that the other felony referred to in our statute defining murder in the first degree must be a distinct felony from one committed on the person whose death is occasioned by the perpetration, or attempt to perpetrate, a felony. I have been thus particular in analyzing the case of the *People v. Rector, supra,* because it is the basis of the opinion expressed by the court of oyer and terminer in the case of the *People v. Butler,* 3 Park. C. C. 377, and of that expressed by Judge Wagner in the case of the *State v. Sloan,* 47 Mo. 604.

Having shown that only one of the three judges in the case of the *People v. Rector,* assented to the principle announced in the case of the *People v. Butler,* and the *State v. Sloan,* it follows that the two latter cases are without

support by the former, and as the opinion announced by my associates is founded mainly on the above cases it does not rest on authoritative foundation.

It may be conceded that no homicide committed in this State can under Wag. Stat., sections 1, 2, p. 445, be murder in either the first or second degree unless such homicide was murder at common law. That the defendant in killing the child under the circumstances disclosed in the evidence would at the common law have been guilty of murder cannot be questioned. At common law, the intent to do "enormous" or severe bodily harm followed by homicide constitutes murder    *    *    So "if A only intend to severely beat B in anger from preconceived malice and happen to kill him, it will be no excuse that he did not intend all the mischief that followed, for what he did was *malum in se* and he must be amenable for its consequences. He beat B with the intention of doing him great bodily harm and is therefore amenable for all the harm he did." Whart. on Homicide, sec. 40, p. 40.

So the defendant in this case in the light of the facts developed by the evidence would, at common law, have been guilty of murder. Is this common law murder under our statute murder in the first or second degree or manslaughter in the first degree? Wag. Stat., sec. 1, p. 445, declares that " every murder    *    *    committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary or other felony, shall be deemed murder in the first degree." If, therefore, the defendant was engaged in the perpetration of a felony in beating the deceased, a child five years old, with a fishing-pole, one and a half inches in diameter, and a grapevine one and one-fourth inches in diameter, in a most cruel manner, and the death of the child was the result, it necessarily follows that the homicide thus committed falls within the statutory definition of murder in the first degree and can be nothing less. That defendant in thus beating the child was engaged in the perpetration of a felony is manifest

from Wag. Stat., sec. 33, p. 450, which declares that "if any person shall be maimed, wounded or disfigured, or receive great bodily harm, in cases and under circumstances which would constitute murder or manslaughter if death had ensued, the person by whose act such injury or danger to life shall be occasioned, shall be punished by imprisonment not exceeding five years, &c." This statute makes it a felony for any person to inflict great bodily harm upon another under circumstances neither justifiable nor excusable, and it necessarily follows that if the defendant was inflicting, and only intended to inflict great bodily harm on the child under such circumstances and then stop, he was engaged in the perpetration of a felony. If in the commission of this felony, the death of the child was occasioned, whether defendant intended it or not, then the inflexible definition of the statute in regard to what is murder in the first degree characterizes the crime of defendant as of that and of no other class.

In speaking of this subject, Wharton (Whart. on Hom., sec. 58, p. 58.) lays down the rule to be that "where a Legislature thus creates a statutory offense, the statutory definition is absolute." Again in sec. 40, p. 40, "where a statutory line is to be followed it has been held that when the damage intended was such as would probably result in death, it is murder in the first degree, even though the death may have been but incidental to the offender's purpose." Had death not resulted from the severe injuries and great bodily harm inflicted upon deceased, it cannot be denied that for the infliction of the injuries as stated in the opinion of the court and as shown by the evidence, without justification or excuse, the defendant would have been amenable to a prosecution for a felony under section 33. In committing this felony the death of deceased was occasioned, and the statute interposes with its "*absolute rule*" and declares that a murder committed under such circumstances shall be deemed murder in the first degree. There is no ambiguity in the language of the act; it is plain and

explicit in the declaration that every murder committed in the perpetration or attempt to perpetrate any felony shall be murder in the first degree. "Statutes are to be interpreted according to their natural and obvious meaning and where there is no ambiguity in the language and its meaning and purpose are clear, courts are not authorized either to limit or extend the act by construction." *Cearfoss v. State*, 1 Am. Crim. Cas. 460. I cannot, therefore, accept a construction of the statute which limits the operation of the words, " other felony," only to those felonies which are distinct and separable from a felony committed on the person whose death is occasioned in the commission of the felony.

The felony committed by B in inflicting great bodily harm on A, under unjustifiable or inexcusable circumstances, is no more merged in the killing of A if death is occasioned thereby, than would the felony of B in committing a rape on A, resulting in A's death. If B starts. out with a fixed felonious purpose to "inflict great bodily harm" on A, under circumstances neither excusable nor justifiable, without intending to kill but to stop with the infliction of great bodily harm and death ensues, the felony committed in inflicting the great bodily harm is no more merged in the killing than would a rape perpetrated by B upon A, which resulted in the death of A, be merged or lost sight of in the death of A. The crime in either case would be murder in the first degree, notwithstanding the violence used in committing the rape and in inflicting the injuries occasioning the death would necessarily be directed against the person killed and would be the sole cause of the death, though not inflicted with a murderous intent and purpose. It is said in the statute that murder "committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be murder in the first degree." In all these enumerated cases the General Assembly has declared the law that the perpetrator shall be held guilty of murder in the first degree, without fur-

ther proof that the death was the ultimate result which the will, deliberation and premeditation of· the party accused sought. Neither of the two specified crimes of rape or robbery could be committed without an assault directed against the person of the one raped or robbed. So there are included in the words, " other felony," a large number of crimes classified as felonies, which could not. be committed except by violence directed against the person. It is made a felony by our statute for one person, on purpose and of malice, to cut or disable the tongue, or to cut off or disable any limb or member of another with intent to kill, maim or disfigure him. Now, if A, in feloniously cutting off the tongue of B, or in feloniously castrating him with no other intent than to maim or disfigure him, occasions his death, can it be said that it was not the intention of the Legislature that he should be held answerable for murder in the first degree, although his specific intent was only to maim and not to kill, and that the felony thus committed, being directed against the person whose death was occasioned by its commission was not, for that reason, such a felony as was contemplated by the General Assembly in the use of the words, " other felony," in defining the crime of murder in the first degree?

A further illustration may be drawn from section 33, *supra*, which makes it a felony where any person shall be maimed, wounded or disfigured, or receive great bodily harm, in cases and under circumstances which would constitute murder or manslaughter, if death ensued. Now, if A, with no intent to kill B, but with a purpose to maim him and send him through life a limbless man, should, on purpose, without cause or excuse, cut off the hand of B, the felony would be consummate and complete as soon as the act of maiming was done, and A would be liable to immediate arrest, trial, conviction and punishment for the felony. If B should, thereafter, die within a year, his death being occasioned by the maiming, A would be answerable for the murder, although the act of maiming

would constitute a necessary ingredient and element of the homicide. Now, the homicide thus committed would be murder at common law. What would this common law murder be under the construction given to the first and thirty-third sections, in the opinion of the court? A could not be convicted of murder in the first degree for a willful, deliberate and premeditated killing, because the facts of the supposed case show that he did not intend to kill, but only to maim; nor could he be convicted of murder in the first degree for killing B in committing the felony of maiming him, because the felonies mentioned in the thirty-third section are said not to be embraced in the words "other felony," used in the first section defining murder. Nor could he be convicted of murder in the second degree, because, as this court has held in the case of the *State v. Wieners*, 66 Mo. 13, an intentional killing must be shown before a conviction can be upheld in that degree. Nor could he be convicted of manslaughter in the first degree, because, before a conviction can be had in that degree the party charged must be shown to have committed the homicide in committing a crime or misdemeanor not amounting to a felony. Every other section of our statute defining manslaughter in the second, third and fourth degrees, would be alike inapplicable, and the result would be that the perpetrator of the common law murder, thus committed, could not, under our statute, be punished at all, if the construction placed upon sections one and thirty-three, *supra*, is to prevail.

In my opinion, the construction placed upon section thirty-three, that it makes the infliction of great bodily harm only a felony when death does not ensue, and that if death does ensue it is made murder or manslaughter, according to circumstances, is not warranted by the language of the act. Whether the infliction of great bodily harm, in cases and under circumstances which, if death ensued, would be murder or manslaughter, is a felony or not, does not depend upon the question whether the party injured

dies or lives, but upon the circumstances under which the act was done; and if the circumstances attending the act do not show justification or excuse, the felony is complete; and if death does ensue, the character or degree of the homicide is not determinable by the provisions of section thirty-three, but by section one of the statute, which provides that a murder committed in the perpetration, or attempt to perpetrate, a felony, shall be murder of the first degree, thereby announcing in unmistakable terms the " absolute rule " before mentioned.

I cannot subscribe to the doctrine announced, that the words " other felony," used in the first section, defining murder in the first degree, refer to some collateral felony, and not to those acts of personal violence to the deceased which are necessary and constituent elements of the homicide itself, and are, therefore, merged in it. This construction abrogates the section, and under it A, who shoots at B with intent to maim him only, (which is a statutory felony,) and kills C, would be guilty of murder in the first degree; while if the shot intended only to maim had killed B, he would only be guilty of some lower grade of homicide. It is conceded that if the death ensues from the perpetration, or attempt to perpetrate, any of the specified felonies, viz.: arson, rape, robbery or burglary, the offense would be murder in the first degree. Why should it not be so in regard to any other felony? The language of the law is, if the murder is committed in the prepetration of the enumerated felonies, or " other felony," it shall be murder in the first degree. The words " other felony " are comprehensive enough to embrace every felony defined by the statute, and it is for the Legislature, and not for the courts, to restrain their operation. The crime of inflicting great bodily harm, as defined by section thirty-three, is just as susceptible of perpetration, although the murder is also committed as is *rape or robbery*. The rape is consummate when penetration is made by force, and against the will and consent of the person; and if death ensues from the vio-

37—68

lence inflicted in the perpetration of the rape itself, the crime of murder under the first section at once appears, although the acts of personal violence to the deceased were necessary and constituent elements of the offense. So it may be said that when A intentionally inflicts great bodily harm on B, under circumstances which the law neither excuses or justifies, the crime of felony is consummate as soon as the "great bodily harm" is inflicted, and he may at once be arrested for the felony, put upon his trial and punished; and if B suffer and linger from the bodily injuries thus received, and die within one year and a day by reason of the "harm" so inflicted, the perpetrator of the offense may be also indicted and put upon his trial for the murder. For if one be convicted of an assault and battery, or assault with intent to kill, and afterwards the injured party dies within a year and a day of the wounds inflicted, such conviction would be no bar to an indictment for murder or manslaughter. Kelly's Crim. Law, § 222, p. 119; 12 Pick. 496; 3 Dev. & Batt. 98: 1 Park C. C. 183; 5 Ind. 527. The crime of inflicting great bodily harm under circumstances neither excusable nor justifiable, which occasioned the death of the person injured, is as separable and distinct from the homicide as is the crime of rape which occasions the death of the person upon whom it is committed, separable and distinct from the homicide. Both are felonies under the statute; and if in committing either, death ensues as a necessary consequence, the law pronounces, with inflexible certainty, the crime murder in the first degree.

In the case of *State v. Green*, 66 Mo. 631, the court instructed the jury to the effect that if the deceased was a deputy marshal of Jackson county, and had in his possession a warrant for the arrest of defendant, and exhibited the same to defendant, and informed him of its contents, and was proceeding in a quiet manner to arrest defendant, and defendant resisted such arrest, and shot and killed deceased to avoid arrest, such killing was murder in

the first degree. This instruction was expressly approved on the authority of the case of the *State v. Jennings, supra*. It is difficult to conceive how the crime of resisting an officer can be committed without personal violence to the officer, and such personal violence resulting in the death of the officer would constitute a necessary ingredient and element of the homicide, and although such violence was directed against the person, it would be murder in the first degree under our statute, as was held in that case. By what authority can it be said that this or that felony is not included in the words "other felony," used in the statute? The words are broad enough to include all. And if we abandon the absolute statutory rule, what test is to be adopted or rule established by which we are to determine whether this felony was intended, and that felony not? The statute is a declaration to all citizens of the State that whoever in committing, or attempting to commit, a felony, commits a homicide, which would be murder at common law, shall be guilty of murder in the first degree.

Nor can I assent to the conclusion announced that the facts of this case, disclosing, as they do, a case of murder at common law occasioned by the infliction of great bodily harm, would justify an instruction for manslaughter in the fourth degree. Wag. Stat., sec. 17 p. 447, defining that grade of manslaughter, could not apply, because the killing must be done under it "by means neither cruel nor unusual, in the heat of passion." The killing in this case was done by the most cruel means, and without heat of passion. Wag. Stat., sec. 18 pp. 447, 448, defines manslaughter in the fourth degree as "every other killing of a human being by the act, procurement or culpable negligence of another, which would be manslaughter at common law, and which is not excusable or justifiable, or is not declared in this chapter to be manslaughter in some other degree." This section cannot be held to apply here, because it is conceded, and the facts unquestionably show, that the killing of the deceased by the accused was murder

at common law, and every manslaughter at common law is governed by Wag. Stat., sections 1, 2 and 7, pp. 445, 446, and is, under these provisions, either murder in the first or second degree, or manslaughter in the first degree.

Judge Ryland, who wrote the opinion in the case of the *State v. Jennings*, *supra*, in the use of the words " homicide committed in inflicting great bodily harm," used them with reference to the facts involved in the case he was considering. The facts established that the homicide was unquestionably murder at common law, and that the bodily harm inflicted on Willard, whose death resulted, was without any justification or excuse. The language employed by him is, therefore, only open to verbal criticism, which in no manner affects the correctness of the conclusion reached, which was, that " although it was not the intention of those concerned in lynching Willard to kill him, but they did intend to do him great bodily harm, and in so doing death ensued, such killing is murder in the first degree by the statute of the State." It would have been a work of supererogation for the court in that case to have added, after the words " great bodily harm," in the instruction, the words " without just cause or excuse," as there was not a particle of evidence even tending to show such cause or excuse. Had such words been added, it would have been the duty of the court to have further instructed that, under the evidence, there was no just cause or excuse for inflicting the great bodily harm. So in the case at bar ; all the evidence showing that the defendant inflicted the beating on the deceased child without the slightest excuse, in a most barbarous manner, as detailed in the opinion of the court, it would have been a useless act for the trial court to have added the words " without justification or excuse," to the words " great bodily harm," where they occur in the instruction, and thus have required the jury to have found a fact which, under the evidence, it would have been the duty of the court to have told them, in another instruction, they could not find.

It is true that the court might well, as it did in an instruction, put the case before the jury on the theory of a willful, premeditated and deliberate killing on the part of defendant.   While this is true, it is equally true that there was another theory more properly applicable to the facts of the case, upon which the State had a right to demand, at the hand of the court, it should be put to the jury, viz.: that every murder committed in the attempt to perpetrate rape, robbery or other felony, is murder in the first degree, without reference to the question of intent to kill on the part of defendant.  I, therefore, think that the court committed no error in submitting the case to the jury on both the theory of a willful, premeditated and deliberate killing, and a killing committed in perpetrating a felony without intent to kill.

SHERWOOD, C. J., concurs in the views above expressed.